UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re:                                             Chapter 11

1769 LLC,                                          Case No. 20-43646-NHL

                               Debtor.
---------------------------------------------------------x

## DEBTOR'S AMENDED PLAN OF REORGANIZATION

The debtor, 1769 LLC (the "Debtor"), hereby proposes the following amended Chapter 11 plan of reorganization (the "Plan") pursuant to the provisions of Title 11 of the United States Code (the "Bankruptcy Code").

## OVERVIEW

The focal point of this Chapter 11 case is to effectuate a prompt closing on the private sale of Debtor's commercial property located at 1769 86th Street, (a/k/a 8514 18th Avenue a/k/a 1765-1777 86th Street), Brooklyn (the "Property") to a third-party purchaser ~~for the total sum of $18 million~~ (the "Sale"). The Sale shall be concluded pursuant to a certain contract of sale, dated September 23, 2020 (the "Sale Contract"), in furtherance of this Plan. Specifically, the Plan incorporates by reference a companion motion to sell the Property (ECF #13) free and clear of all claims, liens and interests, pursuant to 11 U.S.C. §363(b) and (f) and 1123, such that confirmation of the Plan shall also constitute approval of the Sale transaction.

~~The Sale is only conditioned upon the Debtor's ability to deliver the Property free of one of the existing tenants, a supermarket known as Fong & Zhou Supermarket, Inc. (the "Supermarket Tenant"). The lease for the Supermarket Tenant terminated in 2018 and the Supermarket Tenant is subject to an Order of Ejectment issued by the Supreme Court, Kings County prior to the bankruptcy. Legal proceedings relating to the Supermarket Tenant's efforts~~

~~to stay the enforcement of the Order of Ejectment are ongoing, and have been removed to the Bankruptcy Court for an accelerated disposition. In the interim, the Debtor is moving to confirm the Plan so that the sale and confirmation process can go forward simultaneously.~~

The Sale price for the Property for $18.0 million, with the ensuing distribution of the proceeds to pay the holders of allowed claims (hopefully a 100% dividend). This treatment, however, is dependent on the Debtor's ongoing negotiations with the Lender regarding the Lender's consent to distribution to all other creditors pending final resolution of the disputed portion of the Lender's claim, or, if necessary the outcome of an anticipated claims objection regarding the final amounts owed to the Debtor's current mortgagee, BDSII Mortgage Capital JMLLC [as successor to ROC Debt Strategies, defined as the "Lender" for purposes of the Plan] under various cross-default provisions as discussed below. The Debtor currently acknowledges a total undisputed net pay-off of $8,585,002.15 (net of all reserves and unapplied payments), as set forth in the schedule annexed to the Disclosure Statement as Exhibit "A".

On the positive side, the Debtor's long litigation battle with the Supermarket Tenant (defined below) is now over and the Debtor has regained possession of the premises and ejected the Supermarket Tenant as of February 5, 2021. The Supermarket Tenant subsequently relinquished all possible claims and rights pursuant to a transition agreement which gives the Supermarket Tenant the opportunity to remove its personal property as an accommodation without conferring any other rights and providing for mutual releases. The Debtor, in turn, notified the proposed buyer that the conditions to the Sale Contract regarding ejectment have been met. Accordingly, the Debtor anticipates it will now be in a position to close on the Sale by March 22, 2021. The transition agreement has been served upon creditors for Bankruptcy Court approval under Bankruptcy Rule 9019 pursuant to a separate notice of presentment.

# ARTICLE I
# DEFINITIONS

**1.1.** **"Administrative Claim"** means a Claim for costs and expenses of administering the Chapter 11 case allowed under §§ 503(b) and 507(b) of the Bankruptcy Code including: (a) the actual and necessary costs and expenses incurred by the Debtor after the Petition Date of maintaining the Property pending the Sale; (b) compensation for the Debtor's legal counsel (the "Professionals") awarded by the Bankruptcy Court under §§ 330 and 331 (collectively "Professional Fees"); and (c) all US Trustee fees and charges assessed against the Debtor's Estate.

**1.2.** **"Allowed Claim"** means a Claim timely filed before the Bar Date, or which was scheduled by the Debtor without being designated as contingent, unliquidated or disputed, and, in either case, a claim as to which no objection to the allowance thereof (including a request for estimation) has been filed on or before the Claims Objection Deadline; or (b) as to which any objection has been settled, waived, withdrawn or denied by a Final Order; or (c) that is Allowed (i) by a Final Order; (ii) by an agreement between the Holder of such Claim and the Debtor; or (iii) pursuant to the terms of the Plan.

**1.3.** **"Bankruptcy Code"** or the **"Code"** means title 11 of the United States Code, 11 U.S.C. §§101 et seq.

**1.4.** **"Bankruptcy Court"** means the United States Bankruptcy Court for the Eastern District of New York.

**1.5.** **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, and the Local Rules of the Bankruptcy Court.

**1.6.** "**Bankruptcy Fees**" means any amounts payable to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) or to the Clerk of the Bankruptcy Court.

~~1.6.~~1.7.    **"Bankruptcy Schedules"** mean the schedules of assets and liabilities, lists of executory contracts and unexpired leases, statements of financial affairs, and related information filed by the Debtor pursuant to Bankruptcy Rule 1007, as same may have been amended or supplemented (ECF No. 12).

~~1.7.~~1.8.    **"Bar Date"** means the last date of February 5, 2021 fixed by the Bankruptcy Court to file claims against the Debtor.

~~1.8.~~1.9.    **"Claim"** means a claim against the Debtor as defined in Bankruptcy Code § 101(5).

~~1.9.~~1.10.    **"Claims Objection Deadline"** shall mean the Confirmation Date.

~~1.10.~~1.11.    **"Class"** means all of the holders of Claims or Interests having characteristics substantially similar to the other Claims or Interests and which have been designated as a class in the Plan.

3

1.11.1.12.    "**Closing**" means when the Debtor closes the Sale with 1769 Brooklyn LLC (the "Purchaser") in accordance with the Sale Contract and delivers title to the Property as provided thereunder.

**1.13.    "Confirmation Date"** means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the chapter 11 case within the meaning of Bankruptcy Rules 5003 and 9021

1.12.1.14.    **"Confirmation Fund"** means the escrow account established by the Disbursing Agent for the deposit of the net sale proceeds generated from the Sale following payment of the Lender's Claim as set forth herein to be used to pay Allowed Claims and administrative expenses hereunder.

1.13.1.15.    **"Confirmation Hearing"** means the hearing or hearings before the Bankruptcy Court to consider approval of the Plan.

1.14.1.16.    **"Confirmation Order"** means the order of the Bankruptcy Court approving the Plan pursuant to Bankruptcy Code § 1129.

1.15.1.17.    **"Creditor"** means a holder of an Allowed Claim.

1.16.1.18.    **"Disbursing Agent"** means Goldberg Weprin Finkel Goldstein LLP as the Debtor's counsel.

1.17.1.19.    **"Disputed Claim"** means any Claim as to which the Debtor or the Disbursing Agent have interposed an objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules prior to the Confirmation Hearing.

1.18.1.20.    **"Effective Date"** means the date when the Closing happens, which shall occur after the Confirmation Order becomes final, and otherwise forty five (45) days of removal of the Supermarket Tenant, but no later than March 22, 2021, so long as the Supermarket Tenant has been removed at least forty five (45) days prior to March no later than March 22, 2021.

1.19.1.21.    **"Final Order"** means an order entered by the Bankruptcy Court as to which the time to appeal, has expired and as to which no appeal, petition to appeal, or motion for reargument or rehearing has been filed.

1.20.1.22.    **"General Unsecured Claims"** means all allowed Unsecured Claims not entitled to priority in bankruptcy under Section 503(b) and 507 of the Bankruptcy Code.

1.21.1.23.    **"Lender"** means BDSROC Debt Strategies II Mortgage Capital JMLLCLLC, as successor to ROC Debt Strategies II Mortgage Capital WF LLC, holding a duly perfected first mortgage lien against the Property dated July 21, 2017 in the principal sum of $6.8 million.

1.22.1.24.    **"Petition Date"** means October 19, 2020.

4

1.23.1.25. **"Priority Tax Claim"** means a Claim of any federal or state taxing authorities.

1.24.1.26. **"Proof of Claim"** means a written statement setting forth a Creditor's Claim and conforming substantially to the appropriate official form.

1.25.1.27. **"Reorganized Debtor"** means the Debtors following confirmation and consummation of the Plan.

1.26.1.28. **"U.S. Trustee Fees"** means fees payable pursuant to 28 U.S.C. § 1930.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

The Plan classifies Claims and Equity Interests into three (3) Classes, while providing for the payment of Allowed Administrative Expenses and Priority Claims as unclassified Claims. For each Class, the Plan now states that the Claims or Equity Interests are potentially impaired, depending on final resolution of the disputed portion of the Lender's claims which are subject to, based on a dispute over the scope of cross-default and cross-collateralization provisions on the amount of the final pay-off. The Debtor contends that the pay-off is approximately $9.0 million, while, and default interest asserted by the Lender contends that the final pay-off is approximately $17 million. The Debtor intends to file objections to the Lender's claims prior to confirmation.as being due.

All Claims and Interests as defined hereunder are classified as follows:

2.1. **Class 1** – Allowed Claim of the Lender.

2.2. **Class 2** – Allowed General Unsecured Claims.

2.3. **Class 3** – The Equity Interests of the Debtor and Reorganized Debtor.

## ARTICLE III

## UNCLASSIFIED CLAIMS

5

Pursuant to Section 1123(a) of the Bankruptcy Code, the Plan does not classify Administrative ~~Expense~~ Claims, Priority <ins>Tax</ins> Claims or Bankruptcy Fees, all of which shall be paid in full as required by 11 U.S.C. §1129(a)(9) from the monies on hand in the Confirmation Fund.

3.1 **Administrative Expenses**.  Administrative Expenses consist of Professional ~~Fees~~<ins>Fee</ins> and any unpaid fees, costs and expenses incurred by the Debtor in maintaining the Property during the Chapter 11 case and preparing for a Closing on the Sale.  To the extent that any Administrative ~~Expense~~<ins>Expenses</ins> has not been paid prior to Closing, each holder of <ins>an</ins> Administrative ~~Expenses~~<ins>Claim</ins> shall be paid from the <ins>net Sale proceeds, which shall be deposited into the so-called</ins> Confirmation Fund ~~on~~<ins>at</ins> the ~~Effective Date~~<ins>Closing</ins>.

3.2 **Administrative Expense Bar Date**.  ~~A~~<ins>Although the Debtor does not anticipate that there will be any unpaid Administrative Expenses other than accrued Professional Fees, a</ins> date establishing an Administrative Expense Bar Date shall be included as part of the Confirmation Order~~, which shall be served upon all creditors and other parties in interest.~~<ins>.</ins>  All requests for payment of Administrative Expenses that accrued on or before the Confirmation Date must be filed with the Bankruptcy Court by the Administrative Expense Bar Date, except for Professional Fee Claims.  Any holder of an Administrative Expense which fails to file a timely request for the payment of an Administrative Expense shall be forever barred, estopped and enjoined from asserting such Administrative Expense against the Debtor, Reorganized Debtor, Purchaser or the Property~~.~~

3.3 **Professional Fee Claims**.  All requests for allowance of Professional Fee Claims shall be filed no later than thirty (30) days after the Effective Date in accordance with 11 U.S.C. §330. After notice and a hearing, the allowed amounts of such Professional Fee Claims shall be

paid by the Disbursing Agent from the Confirmation Fund upon entry of an appropriate Order of the Bankruptcy Court awarding same.

3.4 **Priority Tax Claims**. ~~All~~The Debtor is current on all pre-petition real estate tax obligations and shall pay real estate taxes billed on January 1, 2021 in the adjusted amount of $116,908.34, which likely will be partially credited at Closing.  The Plan provides that any other outstanding real estate taxes and related charges shall be treated as Allowed Priority Tax Claims for purposes of the Plan~~,~~ and ~~such Priority Tax Claims shall be~~ paid in full ~~at the Closing or as soon as reasonably practicable thereafter~~.

3.5 **Bankruptcy Fees**.  To the extent not otherwise paid, the Debtor shall pay all accrued Bankruptcy Fees, together with any interest thereon, from monies held in the Confirmation Fund.  Bankruptcy Fees, together with any applicable interest, shall be paid until the Chapter 11 case is closed by entry of a Final Decree.

## ARTICLE IV

### CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

4.1 **Classification of Claims and Interests**.  The Plan classifies Claims and Interests against the Debtor consistent with the applicable provisions and standards of the Bankruptcy Code.

4.2 **Summary**.  The categories listed below classify Claims and Equity Interest against the Debtor for all purposes, including voting, confirmation and distribution pursuant to Sections 1122 and 1123(a)(l) of the Bankruptcy Code, as summarized below:

| Class | Designation | Impaired | Entitled to Vote |
|---|---|---|---|
| Class 1 | Lender | Potentially Yes, depending on final allowance of Lender's claim | Yes |

| Class 2 | General Unsecured Claims | Potentially Yes, depending on final allowance of Lender's claim | Yes |
|---------|--------------------------|------------------------------------------------------------------|-----|
| Class 3 | Equity Interest Holders  | Yes                                                              | N/A |

4.3 **Classification, Treatment and Voting**.

**Class 1 – The Secured Claim of Lender**

(a) <u>Classification</u>: Class 1 consists of the allowed secured ~~claim~~Claim of the Lender.

(b) <u>Treatment</u>: ~~The allowed~~ To the extent the parties cannot agree on a consensual treatment, the undisputed portion of Lender's secured claim ~~of the Lender~~in the net sum of $8,585,002.15 (less any reserves and unapplied payments) shall be paid ~~in full~~ from the sale proceeds ~~generated from the Sale of the Property~~ at Closing in consideration for ~~a release of all claims against the Debtor and the~~ delivery of a satisfaction and/or assignment of the Lender's mortgage interest, assignment of rents or any other collateral documents or instruments. The Debtor contends (and the Lender disputes) that the ~~total~~net undisputed amount ~~of~~ to be paid at the ~~Lender's claim due at~~ Closing is ~~$9,086,400,~~the net sum of $8,585,002.15*, calculated as ~~follows:~~set forth in Exhibit "A" to the Disclosure Statement.

~~* By contrast,~~ * The Debtor has existing cash collateral accounts and escrow deposits, which has been applied to reduce the ~~Lender contends that, pursuant to~~ undisputed portion of the ~~cross-default provisions, the entire amount due under the affiliated mortgage held against 8802 LLC (8802") is owed, triggering a total pay off of approximately $17.0million.~~ Claim to $8,585,002.15. The Lender has filed a claim in the sum of $17,210,203.97~~,~~ parts of which will be objected to prior to the confirmation hearing. There have been discussions with the Lender to permit all Claims to be paid in full at Closing, with the residual net proceeds to be deposited in a separate escrow pending final determination of the Lender's disputed portion of its claim by the Bankruptcy Court. Once the Lender's claim is finally determined the escrow fund shall be released to either the Debtor or Lender as directed by the Bankruptcy Court.

(c) <u>Voting</u>: The Class 1 ~~claim~~Claim of the Lender is potentially impaired, and the Lender is eligible to vote on the Plan.

8

**Class 2 – General Unsecured Claims**

(a)   Classification:  Class 2 is comprised of Allowed General Unsecured Claims against the Debtor arising prior to the Petition Date.

(b)   Treatment: Each holder of a Class 2 Allowed General Unsecured Claim shall be paid in an amount up to 100% of the holder's allowed General Unsecured Claim, and potentially with interest at the federal judgment rate, on the Effective Date or promptly thereafter depending on ~~whether objections are filed as to a particular General Unsecured Claim, whereupon distributions shall be made to such creditor in accordance~~the status of ongoing discussions with the ~~provisions of Article VI~~Lender or a determination of the ~~Plan.~~disputed portion of the Lender's Claim.  The Debtor currently projects that the Class 2 claims will total approximately $~~50,000~~132,300.25.  The amount of the final distribution will depend on final allowance of the disputed portion of the Lender's claim and could be less than 100%.

(c)   Voting:  Class 2 is not impaired and General Unsecured Creditors are entitled to vote on the Plan.

**Class 3 – Equity Interests**

(a)   Classification:  Class 3 is comprised of the Equity Interest in the Debtor.

(b)   Treatment:  Tim Ziss, as the Debtor's sole (100%) equity holder of the Debtor, shall retain his 100% membership interest in the Debtor and Reorganized Debtor.  Mr. Ziss shall also be entitled to receive any surplus proceeds remaining on deposit in the Confirmation Fund following the Closing, after all allowed Claims and Administrative Expenses are paid in full with applicable interest.

(c)   Voting:  Class 3 is impaired, but ineligible to vote on the Plan as an insider.

9

## ARTICLE V

## PROVISIONS FOR IMPLEMENTATION OF THE PLAN

5.1     The Plan shall be implemented through the Sale of the Property to the Purchaser in accordance with the Sale Contract with the proceeds generated therefrom to be used to fund all distributions hereunder.  By virtue of confirmation of the Plan, the Debtor's counsel shall serve as Disbursing Agent, duly authorized to make all distributions from the Sale proceeds or Confirmation Fund ~~to the holders of allowed Claims and Administrative Expenses~~.

5.2     **Transfer of Property Free and Clear of Liens, Claims and Interests**. The Debtor's motion to sell the Property (the "Sale Motion") is incorporated by reference under the Plan pursuant to 11 U.S.C. §1123, such that confirmation of the Plan shall also constitute approval of the Sale transaction.  Accordingly, the Confirmation Order shall provide that the Debtor is conveying title to the Property to the Purchaser pursuant to Sections 363(b) and (f), 365 and 1123(a)(5) of the Bankruptcy Code, free and clear of all claims, liens and interests~~, including any possessory interests of the Supermarket Tenant under the terminated store lease and Order of Ejectment~~.

5.3     **Conveyancing Documents**.  On the Closing Date, the Debtor shall convey fee simple title to the Property in accordance with the Sale Contract and the Plan pursuant to customary conveyancing documents, including a Bargain and Sale Deed with covenants in form and substance reasonably acceptable to the Debtor and Purchaser, together with any and all affidavits, certificates and other documents which are necessary to facilitate a sale of property in New York City.

5.4     **Transfer Taxes**. The transfer of the Property to the Purchaser constitutes the making and delivery of an instrument of transfer contemplated and provided by the Plan within

10

the meaning of 11 U.S.C. §1146(a), and thus, the transfer of the Property shall be exempt from the payment of all Transfer Taxes, including any stamp, deed, real estate transfer or other similar tax or governmental assessment. The Confirmation Order shall recognize that the sale of the Property constitutes a "transfer under and in furtherance of the Plan", and direct that the appropriate State and City of New York governmental officials forgo the collection of any Transfer Taxes, mortgage recording, and similar taxes and accept for filing and recording all deeds, instruments or other documents without the payment of Transfer Taxes.

5.5  **Conditions to Closing**.  The Plan is conditioned <ins>only</ins> upon entry of <ins>the</ins> Confirmation Order ~~and the removal of the Supermarket Tenant from possession of the Property on or before February 5, 2021, so that Closing occurs within forty-five (45) days of the removal of the Supermarket Tenant and before expiration of the Sale Contract on March 22, 2021~~.

## ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

6.1  **Disbursements**.  All distributions under the Plan<ins>, other than on account of the Lender's Claim, which shall be paid at Closing,</ins> shall be made by the Disbursing Agent, who shall not be required to give any bond or other security for the performance of his duties hereunder.

6.2  **Objection Deadline**.  Unless otherwise ordered by the Bankruptcy Court, only the Disbursing Agent on behalf of the Debtor shall have standing to object to any Claim by the Claims Objection Deadline.

6.3  **No Distribution Pending Allowance of Disputed Claims**. Notwithstanding any other provisions hereof, no payment or distribution shall be made with respect to any portion of a

11

Disputed Claim unless and until all objections to such Disputed Claim are resolved by stipulation or Final Order.

6.4  **Delivery of Distributions**.  Distributions to holders of Allowed Claims shall be made: (1) at the addresses set forth on the respective proofs of Claim filed by such holders; (2) at the address reflected in the schedules if no proof of Claim is filed; or (3) at the addresses set forth in any written notices to the Disbursing Agent.

6.5  **Undeliverable Distributions**.  If a distribution to the holder of any Claim is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to such holder, and the unclaimed funds shall revert to the Reorganized Debtor.

## ARTICLE VII

### EXECUTORY CONTRACTS

7.1  In connection with the Sale of the Property, the Sale Contract is hereby ratified and deemed assumed for purposes of proceeding with the Closing as provided in the Sale Motion.  Any other executory contracts and agreements pursuant to which the Debtor is a party shall also be deemed assumed as of the Effective Date in accordance with the provisions of 11 U.S.C. §365(a) at the Debtor's or Purchaser's election, with the Debtor responsible to cure any allowed arrears in connection therewith.

## ARTICLE VIII

### RELEASE AND EXCULPATION

8.1  **Binding Effect**.  On the Effective Date, the terms of this Plan shall be immediately effective and enforceable and shall bind all holders of Claims against or Interests in the Debtor, whether or not such holders accept the Plan.

12

8.2 **No Discharge**. Pursuant to Section 1141(d)(3) of the Bankruptcy Code, neither the Plan nor confirmation thereof shall discharge any Claim against the Debtor except that the payment and receipt of distributions hereunder constitute a complete and binding settlement of all Claims against the Debtor.

8.3 **Injunction**. On and after Effective Date, all persons, firms or entities who have held, currently hold, or may hold Claims or Liens against the Debtor or the Property are permanently enjoined from taking any of the following actions: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against or affecting the Property, on account of or in connection with or with respect to any such Claim or Lien other than as contemplated by the Plan; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree or order against the Property on account of or in connection with or with respect to any such Claim or Lien; or (iii) commencing or continuing in any manner or action or other proceeding of any kind against the Property on account of or in connection with or with respect to any such Claim or Lien.

8.4 **Exculpation**. As of the Effective Date and to the fullest extent allowed under applicable law, the Debtor and Disbursing Agent (together with their respective members, managers, officers, directors, agents and legal representatives) are hereby release and exculpated from any claim, obligation, cause of action or liability for any act taken or omission occurring in or after the commencement of the Chapter 11 case related to the Debtor or its Bankruptcy Estate, including but not limited to (i) formulating, preparing, disseminating, implementing, confirming, consummation or administering the Plan (including soliciting acceptances or rejections thereof); (ii) the submission of the Disclosure Statement or any contract, instrument, release or other

13

agreement or document entered into or any action taken or omitted to be taken during the administration of this Chapter 11 case or in connection with the Plan; and (iii) any distributions made pursuant to the Plan.

## ARTICLE IX

## MISCELLANEOUS PROVISIONS

9.1 **Order in Aid of Consummation**. Pursuant to applicable provisions of the Bankruptcy Code, the Bankruptcy Court may enter order(s), as warranted in aid of implementation the Plan.

9.2 **Compliance with Tax Requirements**. The Debtor shall comply with all reporting requirements imposed by federal or state law; provided, however, that the transfer of the Properties and other Assets shall not be subject to any Transfer Taxes as provided under Section 1146(a) of the Bankruptcy Code.

9.3 **Modification**. The Plan may be further amended or modified on motion prior to substantial consummation in accordance with 11 U.S.C. §1127.

9.4 **Filing of Additional Documents**. The Disbursing Agent retains the right to file with the Bankruptcy Court any documents as may be necessary or appropriate to effectuate and implement the Plan.

9.5 **Successors and Assigns**. The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assigns.

9.6 **Governing Law**. The Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.

9.7  **Notices**.  All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein:

    if to the Debtor:    1769 LLC
                                  9322 Third Avenue
                                  Brooklyn, NY 11209

    with a copy to:    Goldberg Weprin Finkel Goldstein LLP
                                  1501 Broadway, 22nd Floor
                                  New York, NY 10036
                                  Attn: Kevin J. Nash, Esq.

**ARTICLE X**

**RETENTION OF JURISDICTION**

10.1  **Retention of Jurisdiction**. The Bankruptcy Court shall retain jurisdiction until the bankruptcy cases are closed to adjudicate the following matters:

        10.1.1. Ensure that the Plan is consummated;

        10.1.2. Resolve all matters arising under or relating to the Plan, including, without limitation, the enforcement, interpretation thereof, and any disputes relating to the sale and transfer of the Property and removal of the Supermarket Tenant or any other matter arising under the Sale Contract;

        10.1.3. Allow, disallow, determine, liquidate, classify or establish the priority, secured or unsecured status of any Claim;

        10.1.4. Grant or deny any applications for allowance of Professional Fee Claims authorized pursuant to the Bankruptcy Code;

        10.1.5. Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

        10.1.6. Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments and other agreements or documents created in connection with the Plan or to enforce all orders, judgments, injunctions, and rulings entered in connection with the bankruptcy cases;

10.1.7. Issue any orders or take such other actions as may be necessary or appropriate to restrain interference by any person or Entity with consummation or enforcement of the Plan; and

10.1.8. Enter an Order or Final Decree concluding the bankruptcy cases.

## ARTICLE XI

## CLOSING THE CASE

11.1  **Bankruptcy Fees**.  All Bankruptcy Fees payable to the Office of the United States Trustee shall be paid until the actual closing of the bankruptcy case.

11.2  **Post-Confirmation Reporting**.  The Debtor shall file a report with the Bankruptcy Court on a quarterly basis, reflecting disbursements made by or on behalf of the Debtor.  The report shall be filed after the conclusion of each such period until the entry of a Final Decree closing this bankruptcy case.

11.3  **Closing the Case**.  The Disbursing Agent shall move for the entry of a Final Decree closing this bankruptcy case upon substantial consummation of the Plan.

Dated: Brooklyn, New York
       ~~January 14~~February 11, 2021

| | |
|---|---|
| 1769 LLC | GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP<br>Attorneys for the Debtor<br>1501 Broadway, 21st Floor<br>New York, NY 10036 |
| By:  /s/ Tim Ziss, Manager | By:  /s/ Kevin J. Nash, Esq. |